Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| GARLAND BARBECUE #1, LLC § | CASE NO. 18-33510 | |
| § | | |
| Debtor § | Jointly Administered under 18-33510 | |

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| FARMERS BRANCH BARBECUE LLC § | CASE NO. 18-33511 | |
| § | | |
| Debtor    . § | Jointly Administered Under 18-33510 | |

**JOINT PLAN OF REORGANIZATION OF GARLAND BARBECUE #1, LLC AND FARMERS BRANCH BARBECUE, LLC DATED MAY 1, 2019**

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, Garland Barbecue #1 and Farmers Branch Barbecue, LLC, Debtors and Debtors-in-Possession in the above-referenced bankruptcy cases, and proposes the following Joint

Plan of Reorganization ("Plan").  The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 9 separate classes.

# ARTICLE I
# DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms.  Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject

to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. "**Case**" shall mean these Chapter 11 cases.

7. "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

14. "**Creditor**" shall mean any person having a Claim against either Debtors.

15. "**Debt**" shall mean any obligation of Debtors, alone, and any obligation of Debtors and
any other Person, to any Entity.

16. "**Debtors**" shall mean either Garland Barbecue #1, LLC and/or Farmers Branch Barbecue, LLC.

17. "**Disbursing Agent**" shall mean the Reorganized Debtors.

18. "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

19.	"**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20.	"**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

21.	"**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.	"**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.	"**Petition Date**" shall mean the date on which the Debtor filed these proceedings, October 30, 2018.

24.	"**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.	"**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.	"**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.	"**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.	"**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.	"**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.	"**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1     Claims and Debts:  Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.  Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4     **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations, including ad valorem taxes for year 2019, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2     Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2     **Class 1**:     Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)
        **Class 2**:     Consists of **Allowed Property Tax Claims**  (Impaired)
        **Class 3**:     Consists of **Allowed Internal Revenue Claim** (Impaired)
        **Class 4**:     Consists of **Allowed Comptroller Claim** (Impaired)
        **Class 5:**    Consists of **Allowed BBCN Bank Claim** ("Impaired")
        **Class 6**:     Consists of **Allowed Shallow Creek** ("Impaired")
        **Class 7**:     Consist of **Allowed Credibly Claim** ("Impaired")
        **Class 8**:     Consists of **Allowed Unsecured Creditor Claims** ("Impaired")
        **Class 9**:     Consists of **Allowed Interest Holder Claims** ("Not Impaired")

## ARTICLE 5
## TREATMENT OF CLASSES

5.1     Satisfaction of Claims and Debts:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan.  Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000  including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall required to file post-confirmation operating reports until this case is closed.  The Class 1 Claimants are not impaired under this Plan.

5.3     **Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are impaired and shall be satisfied as follows: The Allowed Ad Valorem Tax Creditor Claims shall be paid out of the revenue from the continued operations of the businesses. In the Garland case, Dallas County has filed a Proof of Claim in the amount of $719.06. The City of Garland has filed a Proof of Claim in the amount of $771.73 and Garland ISD has filed a Proof of Claim in the amount of $1,599.09. In the Farmers branch case Dallas County has filed a Proof of Claim in the amount of $1,884.14. ("Ad Valorem Taxes")  The Ad Valorem Taxes will receive post-petition pre-Effective Date interest at the state statutory rate of 12% per annum and post-Effective Date interest at the rate of 12% per annum. The Debtors will pay the Ad Valorem Taxes over a period of 12 months commencing on the Effective Date. The Debtors total monthly payment to pay the Ad Valorem Taxes will be approximately $412. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan. The Debtor may pre-pay this claim at any time without penalty.

Class 2 Claimants are impaired under this Plan.

5.4     **Class 3 Claimants (Allowed Tax Claim of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The Allowed Amount of Tax Creditor Claims of the Internal Revenue Service ("IRS") shall be paid out of the continued operations of the businesses. The IRS has filed a Priority Proof of Claim in the Garland case in the amount of $631.25 and in the Farmers Branch case in the amount of $200. However, both of these claims are based upon estimates for returns that have not been processed yet. The Debtor would show once the returns have been filed the Priority Tax Creditor Claims to be the IRS taxes are believed to be approximately $0. To the extent the IRS has any claims they will be paid in full over a 6 month period commencing on the Effective Date, with interest at a rate of 5% per annum. Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a)     If the Debtor fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b)     If the United States declares the Debtor to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c)     If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect

        on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

( d )     The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

( e )     All payment will be sent to: Mike Smith, IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

     Class 3 is impaired under this Plan.

     5.5     **Class 4 Claimants (Texas Comptroller)** are impaired and shall be satisfied as follows: the Texas Comptroller has filed a Proof of Claims in the Garland case in the amounts of $1,078.76 for Franchise Taxes and $9,418.88 for Sales taxes. The Comptroller has filed Proofs of Claim in the Framers Branch case in the amount of $1,078.76 for Franchise Taxes and $14,076.44 for Sales Taxes. The Debtors would show the Franchise tax amounts are estimates and when the returns are processed no monies will be owed. However, to the extent any Franchise or Sales taxes are owed, they will be paid in full with interest at the rate of 5.5% per annum in 36 equal monthly payments commencing on the Effective Date. The Debtors believe if the claims are allowed as filled, the total monthly payment amount on the Comptroller's Claim will be approximately $775.

     A failure by the Reorganized Debtors to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the reorganized debtors fail to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the Comptroller then the Comptroller may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the Comptroller may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court. The reorganized debtors shall have the opportunity to cure two (2) times over the life of the plan. In the event of the third default, the Comptroller may proceed with the state law remedies for collection of all amounts due under state law.

     Class 4 Claimants are impaired under this Plan.

     5.6     **Class 5 Claimants (Allowed Claims of BBCN)** is impaired and shall be satisfied as follows: On or about February 14, 2014, Debtor Garland Barbecue #1, LLC executed that certain Promissory Note in favor of BBCN/Bank of Hope ("BBCN") in the original principal amount of $130,000 ("Note"). The Note was secured by that certain Loan Agreement and UCC-1 Financing Statement properly filed of record. As of the Petition Date the amount due BBCN under the Note was $74,549.82. The Debtor believes the vale of the BBCN collateral is equal to the amount of the BBCN debt. The Debtor shall pay the allowed claim of BBCN in 60 equal monthly payments commencing on the Effective Date with interest at the rate of 5% per annum. BBCN shall maintain its lien on the collateral until paid in full under this Plan.

Class 5 is impaired under this Plan.

5.7     **Class 6 Claimants (Allowed Claims of Shallow Creek Restaurants, Inc.)** are impaired and shall be satisfied as follows: On or about August 1, 2014, Debtor Farmers Branch Barbecue, LLC executed that certain Promissory Note ("Note") in the original principal amount of $212,750 in favor of Shallow Creek Restaurants, Inc. ("Shallow") for the purchase of the Farmers Branch Barbecue location. The Note was secured by that certain Security Agreement and Leasehold Deed of Trust of even date ("Shallow Collateral"). The Debtor shall pay Shallow an allowed secured claim in the amount of $80,156. This claim shall be paid in 84 equal monthly payments with interest at the rate of 5% per annum commencing on the Effective Date. Shallow shall maintain its security interest in the Shallow Collateral until paid in full under the terms of this Plan.

The Class 6 creditor is impaired under this Plan.

5.8     **Class 7 Claimant (Allowed Claims of Retail Capital LLC dba Credibly)** are impaired and shall be satisfied as follows: On or about May 16, 2018 Debtor Garland Barbecue #1, entered into that certain Receivables Purchase Agreement with Retail Capital, LLC dba Credibly ("Credibly") in the original amount of $60,346 ("Garland Contract"). On or about May 8, 2018 Farmers Branch Barbecue entered into that certain Receivables Purchase Agreement with Retail Capital, LLC dba Credibly ("Credibly") in the original amount of $83,083 ("Farmers Branch Contract"). Pursuant to the terms of the Garland Contract and the Farmers Branch Contract, the Debtors sold certain future accounts receivable to Credibly. As of the Petition Date, neither Debtor had any accounts receivable and therefore, Credibly shall have no claim in the bankruptcy estates of Garland Barbecue #1, LLC and Farmers Branch Barbecue, LLC.

The Class 7 creditors are impaired by this Plan.

5.9     **Class 8 Claimants (Allowed Unsecured Creditors**) are impaired and shall be satisfied as follows:  All allowed unsecured creditors shall share pro rata in the unsecured creditors pool for each case. The unsecured creditors in each Debtor's case, shall include the Guaranty claim held by LiftForward in each case.  Each Debtor shall make monthly payments commencing on the Effective Date of $1,000 into the unsecured creditors' pool. The Debtor shall make distributions to the Class 9 creditors every 90 days commencing 90 days after the Effective Date. The Debtor shall make a total of 60 payments into the unsecured creditors pool with the first payment being made on the Effective Date. Based upon the Proof of Claims filed in the cases, the Class 9 creditors in each case  should receive approximately 50% of their Allowed Claims. Debtor may prepay any Class 9 Claim at any time without penalty.

The Class 8 creditors are impaired.

5.10    **Class 9 (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current interest holder of each case, will receive no payments under the Plan, however, the interest holder shall retain their interest in the Debtors.

Class 9 Claimants are not impaired under the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1    **Action to be taken:** Any actions required to be taken by the Debtors on the Effective Date may be taken by the Debtors before the Effective Date or immediately following the date of Final Confirmation.

6.2    **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon current work levels. The Debtor does not intend to dramatically alter the current expenses and has projected only moderate growth over the Plan term.

6.3    Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1    The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1    All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected The Debtor specifically assumes the franchise agreements that they are currently operating under with Dickies Barbecue Restaurants, Inc. Additionally, the Debtors specifically assume their current leases at the locations of Garland Barbecue # 1, LLC and Farmers Branch Barbecue, LLC.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtors.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtors fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtors.

9.3.    Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to Jeff Bass 469-831-5620. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtors, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtors upon Final Confirmation.

12.3    All property of the Reorganized Debtors is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtors against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

# ARTICLE 14
# RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1 To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2 To allow or disallow Claims.

14.3 To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtors' estate and to consummate rejection and termination thereof in connection with Debtors' estate and/or implementation of the Plan.

14.4 To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5 To adjudicate all Claims to an ownership interest in any property of Debtors' estate.

14.6 To recover all assets and properties, including by lawsuit, of Debtors' estate wherever located.

14.7 To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8 To hear and determine any action or proceeding brought by Debtors or the Reorganized Debtors under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9 To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10 To determine the validity, extent and priority of all Liens and security interests against property of Debtors' estate.

14.11 To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12 To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13 To hear and determine Reorganized Debtors' requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14   To enter an order closing this case. The Debtors shall attempt to close the cases within 6 months of the Effective Date.

          Respectfully submitted,

          Garland Barbecue #1, LLC

          _/s/ Jeff Bass_____
          By: Jeff Bass
          Its: Managing Member

          Farmers Branch Barbecue, LLC

          _/s/ Jeff Bass_____
          By: Jeff Bass
          Its: Managing Member

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier